Phyllis W. WILLINGHAM and Dave Willingham, Plaintiffs-Appellees,

v.

TRAILWAYS, INC., a corporation, Defendant-Appellant.

No. 82-7020.

United States Court of Appeals, Eleventh Circuit.

Feb. 10, 1983.

---

Schuyler H. Richardson, III, Patrick W. Richardson, Huntsville, Ala., for defendant-appellant.

Bingham D. Edwards, Decatur, Ala., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

GODBOLD, Chief Judge:

This is an Alabama diversity case. On April 16, 1980, driver Phyllis Willingham signaled for a left turn and then stopped on the highway to wait for oncoming traffic to pass before making her turn, and was struck from the rear by defendant's bus. A jury returned a verdict for Phyllis for $45,-

---

* Honorable Edward S. Smith, U.S. Circuit Judge     for the Federal Circuit, sitting by designation.

000 and for Dave Willingham, a passenger, for $25,000.

## I. Motion for continuance

■ The case was called for trial in a call of the docket, presumably a call for the week since several cases were called. The judge then conferred in chambers with counsel in this and other cases. A settlement of $32,500 was proposed in the present case. The judge returned to the bench and called for trial one of the other cases on the docket. Jurors from the venire were called forward and qualified for service. After a time spent by the court questioning and qualifying the jury, and before the actual striking process began, a break was called. During the break the judge called the deputy clerk to the bench and, pointing to the name of the present case on a copy of the trial docket that was in front of him, stated that he believed the case would settle and that the clerk should prepare a verdict for $32,500. The name of the case was not mentioned. Its order of precedence on the docket in relation to the case for which jurors were being selected was not mentioned.

The case did not settle. The next day defense counsel moved for a continuance, alleging that when the trial judge had told the deputy clerk he expected a settlement and to prepare a verdict for $32,500, the microphone on the bench had been open, so that the judge's words were carried throughout the courtroom loudspeaker system and were heard by all in the courtroom, including the jury venire, and that the circumstances were such that it probably would have been perceived that the reference of the court was to the present case. The court denied the motion without a statement of reasons.

After the verdict defendant filed a motion for a new trial, supported by the affidavit of an attorney, not of counsel in this case, who had been present in the courtroom when the judge's remarks were made. This attorney's affidavit, as later amended, stated that the judge pointed to a case entry on the docket in front of him and referred to his view that "this case" would settle for $32,500, and that the docket could not be seen from the courtroom (as distinguished from the bench). The attorney stated that the conversation could be heard over the public address system throughout the courtroom. Affidavits from the deputy clerk and from counsel for plaintiffs in the present case verified that the judge did not mention the name of the case to which he referred.

We can find no error in the judge's rulings. There is no material dispute about the content of his remarks. He accepted the possibility that his words were heard by jurors. But nothing other than speculation supports defendant's theory that those who heard would have associated the remarks with this case, which was not the case on which trial was commencing and was to follow on for trial only after the case then beginning was completed.

## II. Jury instructions on stopping

Defendant contends that the court failed to instruct the jury that there was a duty on Phyllis Willingham to see that it was safe to stop on the highway preparatory to or as part of her execution of a left turn. Defendant requested in writing this instruction:

> I charge you that, if Plaintiff Phyllis W. Willingham attempted to turn left without first ascertaining that it was reasonably safe to do so, then such failure was negligence upon her part and, if it contributed to proximately cause the accident, it would be a bar to any recovery by the Plaintiffs based upon any prior negligence of the Defendant.

The court gave the following instructions on the duties incumbent on Phyllis relating to making a left turn:

> Alabama law provides that no person shall turn a vehicle to enter a private driveway or move right or left upon a roadway unless and until such movement can be made with reasonable safety, also that a signal of intention to turn left by extended hand and arm or mechanical signal shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. If the De-

fendant has reasonably satisfied you by the evidence that the Plaintiff, Phyllis Willingham, violated either of these provisions such violation would be negligence as a matter of law and if it proximately contributed to the collision between Defendant's vehicle and her automobile, neither Plaintiff would be entitled to recover unless the Plaintiff has reasonably satisfied you by the evidence that Defendant's driver was guilty of subsequent negligence. (T. p. 301).

\* \* \* \* \* \*

As I recall the evidence in this case, the only evidence relating to the contributory negligence of the Plaintiff, Phyllis W. Willingham, relates to her conduct in stopping on the highway to make a left turn. The law of Alabama by statute requires that a person intending to make a left turn across the highway give a turn signal, either mechanically or by outstretched arm during the last 100 feet of the travel before that party intends to make a left turn. The evidence in this case is undisputed, and it's up to the Jury to resolve that dispute, whether or not from a distance described as three blocks a mechanical signal was being given and during the last one block, a left turn signal was being given by an extended arm. That is a dispute which the Jury will have to resolve, but if Phyllis W. Willingham did not give the proper signal for a left turn, she was guilty of negligence as a matter of law, which would bar her recovery for simple, initial negligence. (T. p. 307).

After the oral charge counsel for defendant made several exceptions and then said this:

Your Honor, we would point out there was no charge given on violation of the statutory duty to see that it is safe to stop and turn before doing so, and it was my understanding the Court did intend to charge the Jury on that.

Now, we assign the grounds for these objections that ... there is evidence from which the Jury might find that the Plaintiff stopped without assertaining [sic] that it was safe to do so and, in fact, the evidence is that the Plaintiff was aware that there was peril and nevertheless stopped in the path of the Defendant's bus.

The written request for instruction was properly covered in the oral charge.

The objection to the oral charge was the first time that defendant brought to the court's attention in proper fashion that it contended there was a discrete legal duty on Phyllis relating to stopping in the highway when in the process of making a left turn, and that this duty had to be the subject of separate and specific due care instruction even though a correct instruction had been given concerning care in making a left turn. Arguably the point was not preserved because it presented a theory of the case not embraced in the requested written instruction and not addressed in the oral charge as given, so that the court could have given a supplemental instruction on this new subject matter but was not required to do so. Assuming the point was preserved, there was no error.

Defendant's objection was in terms of a *statutory* duty and it concedes there is none. It cites no Alabama cases establishing such a discrete duty of due care when stopping as part of making a left turn.

The instruction given was drawn almost verbatim from Alabama Code (1982 Suppl.) Section 32–5A–133. That section is, however, part of a new Rules of the Road Act adopted May 19, 1980 and effective 90 days thereafter, both dates being after the present accident occurred. I Acts of Alabama Reg.Sess. 19A, pages 605 et seq. Section 32–5A–133, Alabama Code (1982 Suppl.) is, however, a reenactment without material variation of parts of subsections (b) and (c) of Section 32–5–58, Alabama Code (1975), which was in effect at the time of the accident.

SIGNALS OF STARTING, STOPPING AND TURNING.

\* \* \* \* \* \*

(b) No person shall ... turn a vehicle from a direct course or move right or left

upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.

(c) A signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

\* \* \* \* \* \*

The court did not include in its charge the equivalent of subsection (d) of Section 58:

(d) No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.

We conclude, however, that subsection (d), insofar as it relates to stopping, does not have independent operation with respect to a stop during a turning movement covered by subsections (b) and (c). Rather it seems to us that the requirement that in a turning maneuver the driver ascertain that the movement "can be made with reasonable safety" subsumes the possibility that in executing the maneuver the car may have to come to a full stop. If we concluded otherwise, a driver stopping as part of making a left turn would be bound to give two signals as provided by Section 58(e) and (f): first, a signal to stop, given by a signal lamp or by a hand and arm extended downward, and this followed by a turn signal, given by a signal lamp or by a hand and arm extended horizontally. This makes neither legal sense nor highway driving sense. A following vehicle, seeing the first of these two signals and concluding that the vehicle is stopping, would then be free to pass on its left, as the rules of the road require, but on the way around might be faced with a second signal telling that the vehicle is turning left, which would require the following vehicle to pass on the right.

*Holman v. Brady,* 241 Ala. 487, 3 So.2d 30 (1941), referred to the statutory predecessor of Section 58(d), but the vehicle attempting to make a left turn did not come to a stop. The case was only concerned with the same duties that were covered in the jury's instruction in the present case, i.e., the duty of a turning vehicle to see that the movement can be made in safety and to give a signal.

While the signals prescribed by the legislature do not conclusively establish the duties of care required of a driver, they support our conclusion that there is no divisible duty requiring of a driver intending to make a left turn that he determine that he can stop with safety as part of the turning maneuver, if he has complied with the requirement that he ascertain that a left turn "can be made with reasonable safety." The jury necessarily found that Phyllis complied with this requirement.

■ Defendant's contention is candidly stated in its reply brief:

[T]he jury herein was never told that the law required more of plaintiff Phyllis Willingham, before she could make her stop, than merely giving a turn signal. They were never told that there is primary duty to see that a stop will be reasonably safe before it is made, which applies before the secondary duty to signal one's intent to any traffic that may be affected can arise.

The first sentence of this is, of course, factually incorrect. The jury was instructed concerning the duty to ascertain that a left turn "can be made with reasonable safety." We find no authoritative support for the primary/secondary duty theory presented in the second sentence.

### III. Subsequent negligence

■ The court instructed the jury that, despite a finding of contributory negligence by Phyllis, they could return a verdict for the Willinghams on the basis of subsequent negligence by the bus driver. Defendant contends that no evidence supports this instruction. Under the driver's testimony he became aware of the peril of the Willingham car at a time when he was sufficiently far behind it that he would have been able

to stop but for the failure of the brakes on the bus. He testified that he applied his brakes but that they failed. No maintenance records, post-accident examination, or any other evidence, supported this testimony of brake failure. Other witnesses testified that they saw the bus brake and heard it brake, that it immediately decreased its speed, and that it stopped pretty quickly.

From this evidence the jury was entitled to infer that the driver became aware of the peril of the Willingham car at a time when he was sufficiently far behind it to stop the bus, and to infer also that his explanation of brake failure was false. Thus, the jury could conclude that the driver, with knowledge of peril and with time and distance sufficient to stop, failed to stop, that his explanation of brake failure as the reason for failing to stop was untrue, and that his failure was negligent.

AFFIRMED.